(No. 3351— ▮▮▮▮▮▮▮▮)

BRIDIE SULLIVAN, Claimant, vs. STATE OF ILLINOIS, Respondent.

Opinion filed June 15, 1942.

BOWE & BOWE (JOHN D. CASEY, of counsel) for claimants.

GEORGE F. BARRETT, Attorney General; MILNE & WALSH, Assistant Attorneys General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

Claim was filed herein under the Workmen's Compensation Act for temporary total incapacity, medical, surgical and hospital bills, specific partial loss of an eye. An award is sought in the sum of Nine Hundred Fifty-Six Dollars and Forty Cents ($956.40).

The facts are undisputed; proper notice was given, and the claim was filed within a year. It is alleged that on November 25, 1938, claimant was an employee of the Chicago State Hospital in Chicago, Illinois, and received an injury to her left eye by being struck with a sugar bowl thrown by an insane patient while in the course of her regular employment. That she was given immediate attention by Dr. John M. Krasa, eye, ear and nose consultant at said hospital who treated her for about three days, at which time she was removed to the St. Anne's Hospital in Chicago, Illinois, and there was treated and operated upon by Dr. Jerome W. Hayden, who was called and employed by a relative of the claimant.

Evidence was taken in Chicago consisting of the testimony of the claimant, Bridie Sullivan, Mary Swanson her cousin, and Dr. Jerome W. Hayden on behalf of the claimant, and Dr. John M. Krasa on behalf of the respondent.

Dr. Krasa testified that he was called to examine and treat claimant immediately after the injury. He found the claimant's lids were swollen, and the lids had hemorrhaged; that there was a perforating injury about three-eights of an inch in length, beginning in the cornea, one-sixteenth of an inch above the limbus, and extending downward, and slightly nasal, involving the cornea, the pupil conjunctiva, the sclera, and the ciliary body, and that a small amount of vitreous had escaped. That atropine was instilled and he applied a pressure-bandage to keep the edges of the wound together. He was assisted by Dr. Edlin, staff physician of the Chicago State Hospital. That he was in attendance on her during Friday, Saturday, and Sunday, and in his opinion he was treating her properly.

Dr. Hayden testified claimant's injury was a laceration about 7 or 8 millimeters long, starting at the upper part of the cornea and running downward and nasally through all the layers of the anterior portion, including the ciliary body and down almost to the junction of the lid with the ball; there was a prolapse or protrusion of the iris muscle, some of the ciliary

body and some of the vitreous humor. After he took full charge of the case, he, to relieve the effects of the injury, performed what is called a "flap operation," in which the torn tissues of the eye were sewed together to prevent infection and to prevent further loss of the vitreous humor, the liquid content of the eyeball.

A question has been raised as to whether the respondent should be required to pay the medical and surgical bills incurred by claimant after her removal to the St. Anne's Hospital, and placed in charge of Dr. Hayden.

The evidence shows that before claimant's removal Mrs. Swanson, and Dr. Jerome W. Hayden called at the hospital, where Dr. Hayden himself examined the claimant and decided her condition indicated a need for an immediate "flap operation," but stated he was unable to perform such an operation at the State Hospital and advised her removal. Mrs. Swanson was present when Dr. Hayden and Dr. Krasa were discussing the operation, and later called Dr. Krasa and told him she wanted to take the claimant out of the hospital, and wanted his permission. She told him she was going to have Dr. Hayden take care of the claimant. Dr. Krasa testified that he replied: "That is all right, but there is one understanding you should have. Under the compensation laws, if you remove her from the care of the Chicago State Hospital, or if you change doctors, why, you are going to be liable for the bills. The State won't take care of her out of there, and if you don't wish to change doctors, and keep Dr. Hayden in the hospital, the State will still allow her treatment there as a patient." And she said that was agreeable with her.

Mary Swanson called as a witness, after identifying herself as a cousin of the claimant, testified as follows: "Well I spoke to her brother and he said 'I would rather see Dr. Hayden take care of her,' and I said the same thing." She further testified that Miss Sullivan asked her to try to get some help for her. She said Miss Sullivan kept asking: "Can't you get somebody to give me something?"

Dr. Krasa in qualifying as an expert witness stated that he had specialized in the treatment of the eye, ear, nose and throat for over eighteen years. He testified he was a member of the staff of the eye, ear, nose and throat department of St. Anthony's Hospital, and consultant of ophthomology of the Municipal Tuberculosis Sanitarium, consultant of the eye,

ear, nose and throat hospital of the Chicago State Hospital, consultant of the eye, ear, nose and throat hospital of the House of Correction, consultant of the eye, ear, nose and throat hospital of the Cook County Jail, and had been for eighteen years a member of the staff of the Illinois Eye and Ear Infirmary. He testified he belonged to the Chicago Medical Society, Illinois State Society, American Medical Society, and Bohemian Medical Society. He was licensed to practice medicine in the State of Illinois in 1913.

The court is convinced that Dr. Krasa was a qualified surgeon and was competent to handle the case of the claimant had he been permitted to do so. That she was taken from under his care by the action of the claimant and her agents.

In *Old Ben Coal Corp.* vs. *Industrial Commission*, 311 Ill. Supreme 35, in a somewhat similar case the court said:

"In other words, the employer is not given the right simply because the employee leaves the hospital to which the employer took him, to avoid liability of hospital and medical treatment without tendering other services of like character, unless the facts show that the employee by leaving the hospital, elected to secure a physician and hospital at his own expense."

*Section 8, Paragraph (A) of the Workmen's Compensation Act,* provides as follows:

"Employers shall provide the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter, limited however to that which is reasonably required to cure or relief from the effects of the injury. The employee may elect to secure his own physician, surgeon and hospital services at his own expense."

  *Chiara* vs. *State of Ill.*, 10 C. C. R. 387.

  *Nellie Gleason* vs. *State of Illinois*, Opinion Number 3446.

Under the evidence in this case we are of the opinion that the respondent is not liable for the medical and hospital expense incurred by the claimant through Dr. Jerome W. Hayden, of the St. Anne's Hospital.

The record shows that claimant had been employed at the institution for more than one year prior to November 25, 1938, and that at the time of her accident she was receiving wages in the amount of $63.00 per month with a further allowance for maintenance on the basis of $24.00 per month or a total of $1,044.00 per annum.

There is no conflict in the evidence as to the period of temporary disability.

From a consideration of the record we find as follows:

That on November 25th, 1938, the said Bridie Sullivan and respondent were operating under the provisions of the

Workmen's Compensation Act of the State of Illinois.

That on said date said Bridie Sullivan sustained accidental injuries which arose out of and in the course of her employment.

That notice of the accident was given to said respondent, and claim for compensation on account thereof was made within the time required by the provisions of such Act.

That the earnings of said employee during the year preceding the accident were $1,044.00, and her average weekly wage was $20.07, and her rate of compensation is $10.04 per week. That claimant has no children under the age of sixteen years of age dependent upon her for support.

That all medical and hospital services from the date of the injury to the time she elected to furnish her own were paid by the respondent and that all medical, surgical, and hospital services on and after November 27th, were procured by said employee at her own expense.

That as the result of such accident the said Bridie Sullivan was totally disabled from work from November 25th, 1938, until February 15th, 1939, a period of eleven and four-sevenths (11 4/7) weeks entitling her to the sum of $116.16 for temporary total disability, but the State is entitled to credit for $63.00 which was paid to her for non-productive work, leaving a balance due her for her temporary total disability of $53.16. That the medical testimony supports a fifty per cent (50%) permanent partial loss of the left eye and therefore she is entitled to have and receive compensation at the rate of fifty per cent (50%) of the weekly earnings for sixty weeks as compensation for said permanent partial loss of use of her left eye, or the sum of $602.40, making a total sum due her of $655.56. All of which has accrued and is payable to her in a lump sum.

An award is therefore hereby entered in favor of claimant, Bridie Sullivan, for the sum of Six Hundred Fifty-five Dollars and Fifty-six Cents ($655.56) in a lump sum.

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved June 30th, 1941, and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Revenue Fund in the manner provided for in such Act.